GARVIN v. STONE.

1. JUDGMENT — RES ADJUDICATA — PROBATE COURT — EFFECT OF DECREE.

An agreement entered into in the probate court between the widow and heirs of a decedent, expressed to be for the purpose of avoiding controversy as to the rights of the parties in the property of decedent, by which it is agreed that each shall have certain parts of the property, was not a mere stipulation or step in the proceedings in the probate court to authorize further proceedings by such court, but was a complete agreement between the parties determining their rights in the property; whence the subsequent order of the probate court allowing the administrator's final account and assigning the personal property "according to the terms of an agreement on file in said court" did not have the effect of an adjudication upon the rights of the parties under, nor bar a subsequent action upon, the agreement.

2. PARTIES—NONJOINDER OF DEFENDANTS—NECESSITY OF PLEA.

Where, in an action by a widow against one of the children of her deceased husband on an agreement by the children that she should have a certain sum of money in settlement of her claims against the estate of decedent, it appears that plaintiff is entitled to recover upon the agreement, a verdict is properly directed against defendant for the whole amount due plaintiff, in the absence of a plea of the nonjoinder of defendant's joint contractor, irrespective of the question whether, if plaintiff's suit could only be maintained upon the common count for money had and received, she would only be entitled to judgment for that portion of the fund received by defendant.

Error to Macomb; Erskine, J. Submitted April 13, 1908. (Docket No. 42.) Decided May 1, 1908.

Assumpsit by Kate Garvin against Kittie G. Stone on an agreement for the payment of certain moneys. There was judgment for plaintiff on a verdict directed by the court, and defendant brings error. Affirmed.

*Harry A. Lockwood*, for appellant.

*William T. Hosner*, for appellee.

BLAIR, J. This suit was instituted in justice's court by the widow of Jay Garvin, who died intestate March 16, 1905, against Kittie G. Stone, his daughter, who, with her brother, Leon E. Garvin, comprised his surviving heirs at law. The declaration was on the common counts in assumpsit with notice "that this action is based on a certain written instrument, a copy of which is hereto attached." A bill of particulars was filed, as follows:

"$110.00, due and owing the plaintiff under and by virtue of a certain agreement made and executed by the defendant and her brother, Leon E. Garvin, on or about December 1st, 1905."

The defendant pleaded the general issue, with notice denying the jurisdiction of the justice's court over the subject-matter of the suit because said subject-matter had been involved in a certain suit in the circuit court, in chancery, in Macomb county, and in the probate court for Oakland county, in which courts final decrees had been rendered, adjudicating said subject-matter, which constituted a bar to the present suit.

The case was appealed from the justice's court to the circuit court for Macomb county, where it was tried before a jury upon the same pleadings.

The agreement of December 1, 1905, contained, among other clauses, the following:

"STATE OF MICHIGAN.—THE PROBATE COURT FOR THE COUNTY OF OAKLAND.

"In the matter of the estate of Jay Garvin, deceased.

"For the purpose of avoiding controversies as to the rights of Kate Garvin, widow, and Leon Garvin and Kittie Stone, children and heirs at law of said Jay Garvin, deceased, and for the further purpose of settling and adjusting all rights and controversies relative to the respective rights and claims of said Kate Garvin, on the one hand, and of Leon Garvin and Kittie Stone, on the other hand, in and to the certificates issued to said Jay Garvin

in his lifetime by the Knights of the Modern Maccabees, said certificates numbered respectively No. 1313 and No. 6380 for the sum of $1,000 each and relative to which a bill of interpleader has been filed by the said Knights of the Modern Maccabees, making said Kate Garvin and Leon Garvin and Kittie Stone defendants and which said cause is now pending in the circuit court for the county of Macomb in chancery.

"It is hereby agreed by and between the said Kate Garvin, widow, and said Leon Garvin and Kittie Stone, as follows:

"1. That the said Kate Garvin shall receive as her share and portion of the said estate of Jay Garvin, both real and personal, a deed from the said Leon Garvin and Kittie Stone conveying to her in fee the home on Burdick street in the village of Oxford, that she shall further receive her selections of $200 and household goods as already selected by her amounting to $400 as appears by the order of said court directing the same to be turned over to her; that she shall further receive the full allowance of $6 per week for 52 weeks, to wit: $312; that she shall further receive and have paid over to her attorney out of the proceeds of said certificates the sum of $1,065 net; and that she shall also receive and have $110 deposited by Leon Garvin in the Oxford Bank in her name and also have and receive the certificates of oil stock issued to said Jay Garvin and Kate H. Garvin.

"In consideration of the conveyance of said home and of receiving said selections and allowances and the said sum of $1,065, said $110, and other sums before mentioned, together with said deed of said house and lot, the said Kate Garvin agrees to execute a proper quitclaim deed releasing all her interests in all of the lands of said Jay Garvin to said Leon Garvin and Kittie Stone, and to release all other or further claim to the rest of the estate of said Jay Garvin, hereby assigning all right and claim of, in and to the rest of said estate, other than as herein specified to be conveyed to her, to the said Leon Garvin and Kittie Stone, and authorizing and directing such residue of said estate to be turned over to said Leon Garvin and Kittie Stone.

"It is further understood and agreed that at the time of executing said conveyances the said Kate Garvin shall execute a release of all rights or claims to the rest of the estate of Jay Garvin to Leon Garvin and Kittie Stone

and on the making and allowance of the final account shall receive the balance of the said weekly allowance, which, if not sufficient estate to pay, the said Leon Garvin and Kittie Stone agree to make good to her in cash.

"It is further understood and agreed that the proceeds of said certificates of insurance after deducting $35, cost of filing bill of interpleader, shall be paid over to William T. Hosner, attorney for said Kate Garvin, $1,065, and to Dwight N. Lowell, attorney for Leon Garvin and Kittie Stone, $900, and that receipts therefor respectively shall be executed by said Kate H. Garvin, Leon Garvin and Kittie Stone, with orders to said Knights of the Modern Maccabees to pay said amounts over respectively to said William T. Hosner and Dwight N. Lowell for their respective clients."

The administrator's inventory with the appraisal, filed April 26, 1905, shows, among other items: 1 bay mare appraised at $150; household goods, furniture, bedding, etc., appraised at $200; cash on hand, $120.

The plaintiff made her selection in writing on April 29, 1905, of household furniture, etc., and "the following articles from the said inventory at their appraised value, to the amount of two hundred dollars, to wit: 1 bay mare, $150, cash, $50."

On May 2, 1905, plaintiff receipted to the administrator for "household goods, two hundred dollars." On May 29, 1905, she gave to the administrator the following receipt:

"Received of H. S. Elliott, Jay Garvin estate, two hundred dollars, the same being on account of widow's allowance. $200."

January 23, 1906, the administrator filed his final account, in which he credited himself with the following items, viz.:

"Widow's allowance, Kate Garvin, $200; household goods, Kate Garvin, $200."

On March 3, 1906, the administrator's final account was allowed, and it was further ordered:

"That the real estate of which said deceased died seised

be and the same is hereby assigned to Kittie G. Stone,
Leon E. Garvin, subject to the dower interest of Kate H.
Garvin, widow of said deceased, and it is further ordered
that the personal property on hand, together with the
legacy from the estate of John Garvin above referred to,
be and the same is hereby distributed, as follows: To
Kittie G. Stone, one-half and Leon E. Garvin, one-half,
according to the terms of an agreement on file in said
court."

The undisputed testimony shows that the sum of $110
referred to in the agreement was money which plaintiff's
husband had on hand at the time of his death, which the
said Leon Garvin took to the bank and deposited in plain-
tiff's name and it was used by her; that the administrator
sold the horse selected by plaintiff for $150 and put the
money "in the Oxford Savings Bank to the credit of the
Jay Garvin estate" and, so far as he knew, "that money
remained in the estate;" that the $200 for the widow's
statutory selection of personal property was paid by the
administrator by giving Mrs. Garvin credit for the $110
used by her and $90 in cash. It was conceded that plain-
tiff had fully complied with the agreement.

The circuit court directed a verdict for plaintiff, and
defendant has brought the record to this court for review
upon writ of error.

Counsel for appellant group their assignments of error
under five heads, the first three of which relate to the
construction of the agreement and the effect of the juris-
diction over and proceedings and orders of the probate
court in the matter of the estate of Jay Garvin. The
fourth head concerns alleged errors in admitting testi-
mony, and the fifth, that, in any event, the case should
have been submitted to the jury.

The writing in question was not a mere stipulation or
step in the proceedings in the probate court to authorize
further proceedings by such court, but was a complete
agreement between the parties, determining their rights
not only in the property of the estate then in process of

administration but in the subject-matter of the chancery suit and in the certificates of oil stock.

The rights of the parties were determined by the agreement and not by an order or decree to be made by the probate court. By the agreement, the defendant and her brother contracted that plaintiff should receive a deed of certain real estate, a certain amount of insurance money, and certain sums of money, and, in consideration thereof, plaintiff agreed that her stepchildren should have the balance of the insurance money and the residue of the estate. The plaintiff, by the agreement, was required to execute a conveyance of real estate and at the same time to "execute a release of all rights or claims to the rest of the estate of Jay Garvin to Leon Garvin and Kittie Stone," etc. In effect, the plaintiff sold her interest in the estate to defendant and her brother upon their agreement that she should receive certain property. The agreement on the part of defendant and her brother was an original undertaking on their part that plaintiff should have the specified property, and she had a right to look to them for its performance and to pay no further attention to the proceedings in the probate court.

The agreement was one which the parties had a right to make, the probate court neither had nor claimed jurisdiction over it, either to enforce it or annul it, and its orders allowing the administrator's final account and assigning the personal property "according to the terms of an agreement on file in said court" did not have the effect of an adjudication upon plaintiff's rights under it. *Shurte* v. *Fletcher*, 111 Mich. 84; *Bean* v. *Bean*, 144 Mich. 599; *Hull* v. *Hull*, 149 Mich. 500.

We are of the opinion, therefore, that the circuit judge did not err in his holding that the court had jurisdiction of the subject-matter of the suit, and that the suit was not barred by the decree of the probate court, and was maintainable upon the agreement, which had been fully performed by plaintiff.

We do not think any prejudicial errors were committed

by the court in his rulings as to the admissibility of testimony nor in directing a verdict upon the theory that the facts were undisputed, and the only other question which, in our opinion, requires consideration is, whether the court erred in directing a verdict for $110 against one of the two joint promissors.

It may be that if the plaintiff's suit could only be sustained as an action on the common count for money had and received, she would only be entitled to recover judgment for the one-half of the $110 actually received by defendant; but, under the views above expressed as to plaintiff's cause of action, and the non-joinder of the joint contractor not having been pleaded, the judgment was properly directed against defendant for the full amount. *Mitchell* v. *Chambers*, 43 Mich. 150; *Porter* v. *Leache*, 56 Mich. 40.

The judgment is affirmed.

GRANT, C. J., and MONTGOMERY, CARPENTER, and McALVAY, JJ., concurred.