## HANSBARGER v. HANSBARGER.

1. WILLS—AGREEMENT TO PROBATE.

Persons having such an interest in an estate as entitles them to contest a will may make agreements to forbear or prevent contests.

2. SAME—BREACH OF AGREEMENT—CONSTRUCTION OF WILL.

An agreement between children of testator and their stepmother that the will should be probated and said estate administered according to its terms, except as therein provided, was an agreement not to contest the probating of the will and was not breached by the bringing of a suit for construction of same, notwithstanding the preamble to the agreement recited that it was made for the purpose of avoiding all litigation.

3. CONTRACTS—CONSTRUCTION—CONFLICT.

If, construing the entire agreement, there seems to be any difference in meaning between the preliminary statement and the agreement proper, the operative part, being clear and unambiguous in meaning, must be given effect.

4. WILLS—CONSTRUCTION.

Construction by the court below that the will gives to the widow one-third, in value, of the real estate, affirmed.

On validity of contract not to contest will, see note in 13 L. R. A. (N. S.) 484.

Cross-appeals from Ionia; Davis, J. Submitted April 15, 1919. (Docket No. 49.) Decided May 29, 1919.

Bill by Harley Hansbarger and others against Ada R. Hansbarger for the construction of a will. Defendant filed a cross-bill asking affirmative relief. From the decree rendered, all parties appeal. Affirmed in part, and reversed in part.

*Watt & Colwell* and *Hawley & Eldred,* for plaintiffs.

*Nichols & Locke,* for defendant.

Jerry Hansbarger died April 6, 1918, owner of real and personal property, which he disposed of by a will, which was later admitted to probate and is here set out:

"I, Jerry Hansbarger, of the township of Odessa, county of Ionia, and State of Michigan, being of sound mind and memory, do make, publish and declare this, my last will and testament, hereby revoking all former wills by me heretofore made.

"*First:* It is my will that all my just debts and funeral expenses first be paid out of my personal property, except debts on land, if so much there be. The deficiency if any be charged and paid out of my real estate.

"2d. I hereby give and bequeath to my beloved wife, Ada R. Hansbarger, in case she should survive me, one-third of all of my real estate wherever situate, the same to be selected by her together with all of the buildings situated thereon. Said real estate to become as of her own property in fee simple, giving to her, my said wife or widow as she may be the full and clear title to said real estate and buildings to do with as she shall deem best. Also all of my personal property of whatever name or nature of which I shall die seized. Including all household and kitchen furniture, money, notes, bonds and mortgages of which I may be possess at the time of my death.

"3d. I give and bequeath to my beloved son, Nelson David, now an infant, the sum of one thousand dollars in money, and also the same sum to each and all other children that may be hereafter born as heirs of my body. The said bequest to be paid from the proceeds arising out of the remaining two-thirds of my real estate, either from the sale by the executor of this will or in such manner as he shall deem to be to the best interest of my heirs. It is further my will that should he, my executor, not be able to raise the said sums as herein provided from the sale of said two-thirds of my real estate. Then and in that case each of the said heirs above mentioned shall the sum as may be raised pro rata share and share alike. And should the said sum of one thousand dollars be so raised as above provided and should there be any surplus left over and above the said bequests then and in that case the residue whether in land or money shall be my executor be divided equally among all of my heirs or the heirs of any of my children that are deceased share and share alike, and according to right of representation. That is to say that the children of the deceased heir taking what would have been taken by my heir if he had lived.

"4th. I do hereby request and authorize the judge of probate court to appoint such person or persons as to him shall deem best as executors or executor of this, my last will and testament, and I do hereby authorize and empower said executor or executors as the case may be to sell so much of the two-thirds of my real estate (after the selection of the one-third has been made by the said Ada R. Hansbarger as allotted to her) as shall be necessary to carry out the terms and conditions of this will. Any residue remaining of said real estate to then be divided share alike among all of my heirs whether of the whole or half blood, or the heir of any deceased heir.

"5th. It is my intention and will that the one-third of my real estate be taken by Ada R. Hansbarger shall be equal in value.   \*   \*   \*

"In witness whereof I have hereunto set my hand and seal this day of December on thousand nine hundred and fifteen."

After the will was deposited with the judge of pro-

bate, the persons interested in the estate, under the terms of the will, excepting the infant Nelson David, had a conference, as a result of which an agreement was arrived at, which they caused to be put in writing, and on the 24th of April, 1918, they signed and acknowledged the same. It reads as follows:

"Memorandum of agreement made this 24th day of April, A. D. 1918, between Ada R. Hansbarger of Odessa township, Ionia county, Michigan, party of the first part, and Harley Hansbarger, William Hansbarger, Plenie Hansbarger and Arthur Hansbarger, parties of the second part.

"Whereas, the said Ada R. Hansbarger is the widow of one Jerry Hansbarger, late of the township of Odessa, who died on April 6th, 1918, leaving a last will and testament bearing date December, 1915. And,

"Whereas, the said parties of the second part are sons and heirs at law of the said Jerry Hansbarger, deceased. And,

"Whereas, the said last will and testament of the said Jerry Hansbarger, deceased, has been filed in the office of the probate court for Ionia county, Michigan, for the purpose of having the same probated. And,

"Whereas, the said parties of the second part are not satisfied with the terms and conditions of said last will and testament of said deceased, and are desirous of contesting the said will. And,

"Whereas, the said parties are anxious to avoid all litigation and the expense of the same, and are desirous of reaching an amicable settlement of said estate.

"Therefore, for the purpose of adjusting their differences and avoiding litigation, it is agreed between the said parties hereto as follows:

"*First.* The said party of the first part hereby agrees to pay the sum of one thousand dollars, from the personal property owned by the said Jerry Hansbarger at the time of his death, to her infant son, Nelson David Hansbarger, and thereby release the real estate owned by the said Jerry Hansbarger at the time of his death from the payment of the said one thousand dollars, according to the provisions of paragraph three of said will, and also release the said

parties of the second part from any liability to pay said sum of one thousand dollars to the said David Nelson Hansbarger, as provided by the terms of paragraph three of said will. Said sum of one thousand dollars to be paid by the said Ada R. Hansbarger within ninety days from the time of appointment of the executor of said Jerry Hansbarger, deceased.

"*Second.* It is further agreed that the said party of the first part shall be entitled to receive the entire proceeds obtained from the sale of the forty acres of land formerly owned by the said Jerry Hansbarger, being the northeast quarter (¼) of the northwest (¼) of section six (6), township of Sebewa, Ionia county, Michigan.

"*Third.* It is further agreed that in consideration of the said party of the first part paying the said sum of one thousand dollars, above mentioned, to Nelson David Hansbarger, and releasing the real estate and the said parties of the second part from the payment of said sum of one thousand dollars, that said parties of the second part shall not in any way contest the probating of the said last will and testament of the said Jerry Hansbarger, deceased, but that said instrument now on file in the probate court shall be probated, and said estate shall be in all respects administered according to the terms of said will, except as herein provided.

"In witness whereof the said parties have hereunto set their hands and seals the day and year first above written."

Thereafter the will was admitted to probate and an administrator with the will annexed was appointed, and still later the widow filed in probate court a certain declaration and election, the relevant portions of which are:

"Whereas, by the terms of said last will and testament the said Jerry Hansbarger, deceased, did give, bequeath, and devise to me, Ada R. Hansbarger, his wife, the one-third (1-3) of all his real estate wherever situated, the same to be selected by me together with all the buildings situated thereon, said real estate to become my own property in fee simple and giving

to me the full and clear title to said real estate and buildings to do with as I shall deem best, and, whereas, I now decide to make my selection of my one-third (1-3) of the real estate together with said buildings, I do by this instrument elect and declare that I hereby select the east forty (40) acres of the east three-fourths ($\frac{3}{4}$) of the southwest quarter ($\frac{1}{4}$) of section No. ten (10), township five (5), north of range seven (7) west and the buildings thereon situated as and for my share of the real estate of said deceased to me devised under the terms of said will and I hereby request that said court in making the decree of assignment of said estate to assign to me the aforesaid described parcel of land hereby selected."

Plaintiffs, July 1, 1918, filed the bill in this cause, setting up the facts which are above related and others. The fifth paragraph of the bill reads:

"5. Your orators further show unto the court that after the death of the said Jerry Hansbarger, as hereinbefore set forth, and prior to the allowing of the admission of said will to probate on May 11, 1918, that your orators and the said Ada R. Hansbarger, the defendant, got together and talked over the matters pertaining to said estate, and then and there entered into an agreement or contract in writing, wherein and whereby they agreed that certain disputed matters pertaining to said will should be settled; that said agreement was executed on the 24th day of April last, and is now on file in the probate court for said county of Ionia, a true copy of the same being hereto attached and marked Exhibit 'B,' and is made a part of this bill of complaint."

The seventh paragraph of the bill reads:

"7th. Your orators further show unto the court that at the time of the execution of the will hereinbefore mentioned, and marked Exhibit 'A,' the said Jerry Hansbarger was the owner of one hundred and sixty acres of land, forty acres of which he disposed of prior to his death, and a considerable amount of personal property, and that your orators are the sons of the said Jerry Hansbarger, deceased, by a former wife,

and that the said Jerry Hansbarger, at the time of the execution of said will on, to-wit, the month of December, 1915, was desirous of providing generously for his said wife, Ada R. Hansbarger, and that it was his intention to devise to the said Ada R. Hansbarger a one-third share of all of his real estate wheresoever the same might be situated, and not one-third of the said real estate together with the buildings thereon, and that he also wished to bequeath to the said Ada R. Hansbarger all of his personal property."

The relief prayed for, so far as it is of importance to state it, is:

"That the said last will and testament of said deceased may be construed, and the true meaning and construction and intent thereof ascertained and determined by the order and decree of this court whether under the proper construction to the meaning and intent of said will the said defendant, Ada R. Hansbarger is entitled to any more than a third interest in value of said real estate of which the said Jerry Hansbarger died seized."

The widow answered the bill, admitting most of the matters therein stated. As to paragraph 5 she says:

"5. Answering paragraph 5, this defendant admits that prior to the admission of the said will to probate the plaintiffs and this defendant met at the office of Watt & Colwell, attorneys of Ionia, Michigan, at the request of the said plaintiffs and that R. A. Colwell, one of the said attorneys, prepared an agreement in writing attached to said bill of complaint marked Exhibit B and the said Colwell representing said plaintiffs and the said plaintiffs representing that by the execution of said agreement all litigation of said estate would be avoided and this defendant desiring to avoid all litigation and so signed said agreement. That said agreement and the consideration therein expressed was for the purpose of settling all differences relative to the probate of said will and the construction thereof, and that in consideration thereof and of the. moneys therein to be paid by this defendant, it was fully intended and agreed that there should be no litigation over said will or the probate thereof, and that this

defendant should have her full share of said estate as provided for in said will without litigation and this defendant alleges that she is entitled to the full and complete performance of said agreement on the part of said plaintiffs and that she and said estate should not be put to any expense concerning the administration of said estate and the construction of said will. That this plaintiff understood at the time of making said agreement that she was entitled to have and receive the full one-third of the lands owned by said Jerry Hansbarger at the time of his decease with the buildings thereon and that she had a right to select the full forty acres of said lands containing said buildings. And this defendant avers that she is entitled to the specific performance of said agreement."

As to the seventh paragraph of the bill, she answered:

"7. Answering paragraph 7, this defendant admits that at the time of the execution of said will marked 'Exhibit A' and attached to said bill of complaint the said Jerry Hansbarger was the owner of 160 acres of land and that he disposed of forty acres during his lifetime. This defendant further admits that the said plaintiffs are the sons of the said Jerry Hansbarger by a former wife and that the said Jerry Hansbarger at the time of the execution of said will was desirous of providing generously for this defendant and further admits that it was the intention of the said testator Jerry Hansbarger to devise to this defendant, Ada R. Hansbarger one-third of all of his real estate wherever the same may be situated and to bequeath to this defendant, Ada R. Hansbarger, all of his personal property; but this defendant denies that it was not the intention of said testator to devise to this defendant one-third of all his real estate together with the buildings thereon."

She claims the benefit of a cross-bill, in which she asks the court to construe the will and to construe paragraph 5 of the will as if it were meaningless, asks that the decree provide that Nelson David Hansbarger is an heir of the testator and entitled to one-fifth of the rest, residue and remainder of the real

estate, and that the agreement made April 24, hereinbefore set out, be canceled and held for naught because plaintiffs have neglected to abide by the terms thereof. The plaintiffs answered the cross-bill. The cause came on to be heard in open court, testimony was offered and received, from which, and from the pleadings, it appears that when the will was drawn the testator owned 160 acres of land, one forty of which he sold in his lifetime for $1,625, which sum appeared to be a part of his personal estate when he died. With respect to the making of the will, the testimony of the lawyer who drew it is to the effect that the testator brought a penciled memorandum to his office, asking him to prepare a will as indicated in the memorandum. It was prepared when he returned to the office and testator read it, called attention to the division of the land as provided for in the draft of the will and made objection to it. Upon this subject, the lawyer further testified:

"*Q.* What did he say about it?
"*A.* He wanted to know how it could be remedied without destroying the entire will and write an entire new one. He did not have time to wait. I thought a minute and I thought after getting his explanation of what he wanted of that land, I told him I thought it could be corrected by adding another clause expressing his intentions. At that time the fifth clause was not there at all, when he came back.
"*Q.* What statement did he make to you?
"*A.* He wanted it changed. He stated this: 'I don't intend for it to cover the entire one-third of that land. I want her to have the home with the buildings,' he says, 'I want to be governed according to the valuation. That forty is worth nearly or quite half as much as the entire balance of the land, had all of the buildings on and I want her to have that for a home.' Then I suggested that there be added the fifth clause to state his intention, what he meant that it should be, one-third value in real estate. I did

not describe any land value whatever he died seized. Same way with the personal property. My memory was at that time he had one hundred sixty acres. After I suggested that, he says, 'that is what I want, that is what I intend, what I want.' So I wrote it and he looked it over, read it carefully. He said 'Yes, that is all right.' I wrote that, then I called in a witness that was passing by, or rather just coming into the office. He witnessed the will, put it away in my office safe. I kept it there until after he was dead.

"Cross-examination, by Mr. Locke:

"I presume that the east 40 acres without the buildings is equal in value to either of the other forty acres. At the time the will was drafted there was 160 acres, I think.

"That is all.

"By the court:

"Q. What did you understand the law to be at that time with reference to the widow's right in real estate if no will had been made?

"A. Make selection of her dower. I understand the law to be, statute very plain for a great many years on it, if she made selection of her dower, had it set off to her, it was to be set off to her according to value.

"Q. I know, but what share would she own?

"A. One-third.

"Q. Would she have it as dower or heir?

"A. She would have it as dower.

"Q. You understand the law to be that way?

"A. Then if she selected it.

"Q. Didn't you know the law had been changed so that the wife inherited actually one-third of all the real estate a man died seized of if there is children, and if there is no children, she could get one-half?

"A. I wasn't aware of that fact.

"Q. If you had not made any will at all she would be just as well off in reference to real estate, as you now claim she would be by this will?

"A. If that is the law now.

"The Court: I asked the question for the purpose of ascertaining why he deemed it necessary to put anything about the buildings at all in, if the husband did not intend she would take any more than the value. His expression in this will don't make it any better

for the widow as to real estate than as though there had been no will made."

The decree, from which both parties appeal, construes the will as meaning that the widow was devised an undivided one-third in value of the real estate including the buildings, holding that she is entitled to select any one-third of the real estate after the same is divided into thirds of equal value. The decree further provides:

"That said Nelson David Hansbarger is bequeathed the sum of $1,000, the payment of which is made a charge upon the remaining two-thirds of said real estate and buildings after the said Ada R. Hansbarger has selected her one-third of said real estate and buildings according to value; that the executor of said last will and testament is authorized to sell said remaining two-thirds of said real estate after said Ada R. Hansbarger has made her selection as aforesaid for the purpose of paying the said bequest to the said Nelson David Hansbarger, that the remainder of the said two-thirds of the said real estate after the payment of the said $1,000 to the said Nelson David Hansbarger, is devised in equal shares to the said Harley Hansbarger, William Hansbarger, Plenie Hansbarger, Arthur Hansbarger, and David Nelson Hansbarger, share and share alike in fee simple,"

—and that the contract of April 24th has been forfeited by the plaintiffs and is canceled and the parties thereto relieved from all liability thereunder. Provision is made for filing a petition in this cause for a supplemental decree ordering a partition of the real estate according to the construction of the will indicated by the decree. It is recited in the decree that the testimony of the scrivener relative to conversation had by him with the testator relative to the making and execution of the will is stricken from the record.

OSTRANDER, J. (*after stating the facts*). It is the rule in this State that persons having such an interest

in an estate as entitles them to contest a will may make agreements to forbear or prevent contests. *Bean* v. *Bean*, 144 Mich. 599; *Hull* v. *Hull*, 149 Mich. 500; *Garvin* v. *Stone*, 152 Mich. 594; *Conklin* v. *Conklin*, 165 Mich. 571; *Layer* v. *Layer*, 184 Mich. 663; *Sellers* v. *Perry*, 191 Mich. 619. We are of opinion that the agreement in this case is, plainly, not to contest the probating of the will. The agreement was executed when the will was, without contest, admitted to probate. No appeal was taken and the widow paid the legacy to Nelson David Hansbarger, releasing the real estate and the proceeds of it from any lien in his favor. The will, however, was still an instrument, the meaning of which was to be determined. Admitting it to probate necessarily submitted it to the probate court for construction, if construction was required, and to interpretation. None of the parties agreed to submit to any assignment of the estate which the probate court might make. And when the widow indicated by her election that she gave to the will a meaning different from the one claimed for it by the other persons in interest, the power of the chancery court to settle the dispute was clear. Judicial construction of this instrument under the circumstances does not involve a contest of the probating of the will. The agreement expressly recites that the estate shall be administered "according to the terms of said will except as herein provided." The question presented to the court is one of the meaning of the terms of the will. It is true the preamble to the agreement expresses as an inducement for making it the avoidance of all litigation and the expense of the same and a desire to reach an amicable settlement of the estate. If, construing the entire agreement, there seems to be any difference in meaning between these or any of these preliminary statements and the agreement proper, the operative part, being clear and un-

ambiguous in meaning, must be given effect. This is the general rule. 24 Am. & Eng. Enc. Law (2d Ed.), p. 59. See, also, *Black* v. *Herring,* 79 Md. 146 (28 Atl. 1063) ; *Chase* v. *Dickey,* 212 Mass. 555 (99 N. E. 410) ; *Chew's Appeal,* 45 Pa. St. 228; Rood on Wills, § 622; Page on Wills, § 683.

. The circuit court has determined that the widow was wrong in her construction of the will and was claiming too much—has decided that *by the terms of the will* she cannot have what she claims. This construction preserves to the widow a right of selection, which the will gives to her, does no violence to any language contained in the will. Testator might have devised to her a particular portion, bounding it or describing it. It is not clear, we think, that the fifth clause of the will is entirely meaningless; certainly it does not cast doubt upon the proposition that the testator devised one-third of his real estate, in value, to his wife.

We affirm the decree in respect to the construction of the will and reverse it in so far as it adjudges the agreement of the parties to be forfeited and canceled. Plaintiffs will recover costs of this appeal.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.